UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EAGLE ROCK TIMBER, INC., an Idaho corporation,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation; CAROTHERS CONSTRUCTION, INC., a Mississippi corporation; SEAN CAROTHERS, an individual; BEN LOGAN, an individual; and CHRIS BOGGS, an individual,<br><br>　　　　　　　　Defendants. | Case No. 4:21-cv-00263-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. Introduction

Pending before the Court is a Motion to Stay Proceedings Pending Arbitration or for Alternative Relief ("Motion to Stay") filed by Defendants Liberty Mutual Insurance Company, Carothers Construction, Inc., Sean Carothers, Ben Logan, and Chris Boggs (collectively "Defendants"). Dkt. 11.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motion will be decided on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons that follow, the Motion to Stay is GRANTED in PART and DENIED in PART.

## II. Background

Plaintiff, Eagle Rock Timber, Inc. ("Eagle Rock"), brings this action against Defendants alleging five causes of action: (1) breach of contract – delay and hinderance; (2) breach of contract – failure to pay; (3) breach of the implied covenant of good faith and fair dealing; (4) equitable estoppel; and (5) interference with prospective economic relations. Dkt. 7. Eagle Rock brings its breach of contract – delay and hinderance, and equitable estoppel claims solely against Carothers Construction, Inc., Sean Carothers, Ben Logan, and Chris Boggs (collectively "Carothers"). Eagle Rocks asserts its other three claims against all Defendants.

Eagle Rock's suit arises out of its subcontract with Carothers. Specifically, on or about December 5, 2018, Battelle Energy Alliance, LLC ("BEA") requested bids for construction of a facility maintenance building and utility corridor within the Idaho National Laboratory boundaries in Scoville, Idaho (the "Project"). The Project called for the construction of a new maintenance building and, among other things, asphalt paving and installation of electrical and sewer utilities. Carothers was the winning contractor for the Project. Liberty Mutual Insurance Company ("Liberty Mutual"), as surety, and

Carothers, as principal, posted Miller Act performance and payment bonds on the Project to the United States Department of Energy, as obligee.[1]

Carothers subsequently hired Eagle Rock to perform certain activities for the Project, including site demolition, earthworks, and asphalt paving. On or about April 19, 2019, Carothers and Eagle Rock executed Subcontract No. 532-40732 ATR Maintenance Support Building (Contract #216044) & ATR Utility Corridor Extension (Contract #212099) (collectively, the "Subcontract") under which Carothers agreed to pay Eagle Rock $1,167,007.00 for the above-referenced work. The Subcontract contained an arbitration clause, mandating that disputes between Eagle Rock and Carothers "arising out of or relating to" the Subcontract be decided in binding arbitration. Dkt. 11-2, § 19.

After the Subcontract was signed, Eagle Rock alleges Carothers caused multiple delays to the Project. For instance, Carothers purportedly failed to disclose a schedule or to timely obtain badges for employees. Eagle Rock contends Carothers also delayed and hindered the Project by producing inaccurate survey control information, causing demineralized waterline damage, allowing other subcontractors to stage materials in Eagle Rock's work area, impairing Eagle Rock's access to the job site, moving support trailers, material, and equipment from the site, misrepresenting the scope of work Eagle Rock was required to perform, and causing additional delays to the Project. In addition, Eagle Rock

---

[1] The Miller Act requires a general contractor on a federal construction project to furnish a bond "for the protection of all persons supplying labor and material in carrying out the work provided for in the contract[.]" 40 U.S.C. § 3131(b)(2). The Act "represents a congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings." *Mai Steel Serv. Inc. v. Blake Constr. Co.*, 981 F.2d 414, 416–17 (9th Cir. 1992) (citation omitted).

alleges Carothers failed to make payments to Eagle Rock under the terms of the Subcontract. As a result of the Carothers' delay and/or nonpayment, Eagle Rock alleges it has suffered no less than $681,687.07 in damages.

When Carothers failed to pay Eagle Rock, Eagle Rock submitted a claim for payment to Liberty Mutual. Although Liberty Mutual insured the performance and payment bonds for the Project, Liberty Mutual refused Eagle Rock's payment request. Eagle Rock thereafter filed the instant suit on June 18, 2021.

This case was initially assigned to United States Magistrate Judge for the District of Idaho Candy W. Dale. On November 30, 2021—before Defendants had responded to the Complaint—Eagle Rock filed an Amended Complaint as of right. Dkt. 7. On December 3, 2021, Defendants answered the Amended Complaint and also filed the instant Motion to Stay. Dkt. 11. After the Motion to Stay had been fully briefed, the case was reassigned to the undersigned, due to a lack of consent to a magistrate judge, on February 7, 2022.

## II. LEGAL STANDARD

Although Defendants filed a "Motion for Stay or Alternative Relief," they also seek an order compelling arbitration. Dkt. 11-1, at 13[2] (requesting an order compelling Eagle Rock to arbitrate its claims against Carothers). The Court accordingly sets forth the legal standards for both compelling arbitration and staying proceedings.

### A. Compelling Arbitration

---

[2] Page citations are to the ECF-generated page number.

MEMORANDUM DECISION AND ORDER - 4

The Federal Arbitration Act ("FAA") provides that any arbitration agreement within its scope "shall be valid, irrevocable, and enforceable[.]"[3] 9 U.S.C. § 2. The FAA also permits a party "aggrieved by the alleged refusal of another to arbitrate to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (cleaned up). "By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" *Id*. (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)).

Under the FAA, a court's role is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). If both elements are satisfied, the FAA requires the Court to enforce the arbitration agreement. *Id.* The party seeking to compel arbitration has the burden of proving each requirement. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). However, "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

   **B. Stay Request**

---

[3] An action brought under the FAA "is properly characterized as arising under the body of federal law regulating interstate commerce." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983). Although Section 20 of the Subcontract contains an Idaho choice of law provision, the parties do not dispute the application of federal law to the Motion to Stay.

A district court has inherent power to control its own docket and calendar. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "A district court may stay proceedings pending resolution of independent proceedings which bear upon the case, whether those proceedings are judicial, administrative, or arbitral in character." *Pub. Emps. for Envtl. Responsibility v. U.S. Dep't of Navy*, 2009 WL 2163215, at *9 (W.D. Wash. July 17, 2009) (citing *Mediterranean Enters.,* 708 F.2d at 1465). In assessing whether a stay is appropriate, courts weigh the "hardship or inequity which a party may suffer in being required to go forward," and the "orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

### III. ANALYSIS

Section 19 of the Subcontract states "all claims, disputes, and other matters in controversy between Contractor [Carothers] and Subcontractor [Eagle Rock] arising out of or relating to this Subcontract shall be decided by binding arbitration in accordance with the current and applicable Construction Industry Rules of the American Arbitration Association[.]"[4] Dkt. 11-2, § 19. Defendants argue all of Eagle Rock's alleged claims arise out of and relate to the Subcontract. As such, Defendants ask the Court to enforce the Subcontract's arbitration clause and to stay Eagle Rock's claims against all Defendants pending arbitration.

---

[4] The Ninth Circuit has highlighted the phrase "arising out of or relating to this agreement" is a "broad arbitration clause" requiring arbitration of a wide range of disputes. *Mediterranean Enters.*, 708 F.2d at 1464.

In the alternative, Defendants argue that if the Court does not stay the proceedings, it should dismiss this case under the terms of the Subcontract. Dkt. 11-1, at 11–13. Specifically, in addition to the arbitration clause, Section 19 of the Subcontract mandates: "[t]he locale for any arbitration or litigation involving the Subcontractor and the Contractor shall be at a mutually agreeable location *other than Idaho or Mississippi*."[5] Dkt. 11-2, § 19 (emphasis added). If the Court does not stay Eagle Rock's case pending arbitration, Defendants argue the Court should enforce the Subcontract's prohibition against litigating in Idaho and dismiss this case.

Eagle Rock's response to the Motion to Stay significantly limits the issues before the Court. In response to Defendants' Motion to Stay, Eagle Rock concedes the Subcontract contains a valid agreement to arbitrate that encompasses each of its claims against Carothers. *See generally* Dkt. 16. Eagle Rock also concedes that each of its claims against Carothers should be stayed pending arbitration. *Id.* at 8. Because there is no dispute that the Subcontract contains a valid arbitration agreement, or that all of the underlying issues are subject to arbitration, the FAA calls for a stay of Eagle Rock's claims against Carothers:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referrable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

---

[5] Eagle Rock is located in Idaho; Carothers is located in Mississippi.

9 U.S.C. § 3 (emphasis added).

While Eagle Rock does not dispute that the Court must stay this litigation with respect to its claims against Carothers, Eagle Rock argues its claims against Liberty Mutual should not be stayed. Eagle Rock highlights that Liberty Mutual is a non-signatory to the Subcontract and that Liberty Mutual has opted out of arbitration. Eagle Rock thus opposes Defendants' Motion to Stay solely with respect to Liberty Mutual. In addition, Eagle Rock argues the provision of the Subcontract prohibiting arbitration or litigation in Idaho is void under Idaho code section 29-110(1).

The Court addresses each contention in turn.

### A. Stay of Eagle Rock's Claims Against Liberty Mutual

Defendants argue the stay of this case should include Eagle Rock's alleged claims against Liberty Mutual[6] since such claims "are predicated on issues that are subject to arbitration, i.e., Carothers' alleged breaches of the Subcontract." Dkt. 11-1, at 9. Eagle Rock counters that the Court has discretion to stay Eagle Rock's claims against Liberty Mutual pending the outcome of Eagle Rock's arbitration with Carothers, but that the Court is not required to do so. Dkt. 16, at 7 (citing *Lewis v. CEDU Educ. Servs., Inc.*, 15 P.3d 1147, 1153 (Idaho 2000)). Eagle Rock also argues staying its claims against Liberty Mutual would allow Liberty Mutual to "have its cake and eat it too" because Liberty Mutual

---

[6] As a non-signatory to the Subcontract, Liberty Mutual cannot be compelled to arbitrate, and it has not agreed to arbitrate. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013); Dkt. 11-1, at 10.

voluntarily opted out of arbitration while also denying Eagle Rock's demand for payment. Dkt. 16, at 8. The Court disagrees.

First, Eagle Rock does not dispute that each of its claims against Liberty Mutual arise out of the Subcontract and relate to Carothers' alleged breach of the Subcontract. *See generally* Dkt. 16. Thus, Eagle Rock's claims against Liberty Mutual are predicated on whether or not Carothers breached the Subcontract, which must be decided in arbitration. Allowing Eagle Rock's claims against Liberty Mutual to proceed in this forum during Eagle Rock's arbitration with Carothers would needlessly duplicate the proceedings and could potentially produce inconsistent results.[7] *United States ex rel. Newton v. Neumann Caribbean Int'l Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985) ("*Newton*") (explaining considerations of economy and efficiency "fully support[ed]" the lower court's stay of claim against surety pending arbitration between subcontractor and contractor); *United States v. Bhate Envtl. Assocs., Inc.*, 2016 WL 544406, at *4 (D. Alaska Feb. 9, 2016) (finding a stay of claims against surety pending arbitration between contractor and subcontractor would promote judicial economy and efficiency).

Second, the FAA's stay provision is regularly applied in the context of Miller Act bond claims. *Lee & Rua Co. v. Great Am. Ins.*, 2008 WL 1868633, at *2 (W.D. Wash. 2008). "In such cases, it is appropriate to refer the breach of contract claim to arbitration and stay the Miller Act claim pending completion of arbitration." *Id.*; *see also Newton*, 750

---

[7] For instance, it would be entirely inconsistent if this Court held Liberty Mutual is liable to Eagle Rock if the arbitrator finds Carothers did not breach the Subcontract.

MEMORANDUM DECISION AND ORDER - 9

F.2d at 1427 (finding district court did not abuse its discretion in staying Miller Act proceeding pending arbitration between contractor and subcontractor); *United States ex rel. Ballard Marine Constr., LLC v. Nova Grp., Inc.*, 2021 WL 3174799, at *8 (W.D. Wash. Jul7 27, 2021) (staying proceeding against surety pending contractual dispute resolution proceedings between subcontractor and contractor); *United States ex rel. New IEM, LLC v. Tri-Technic, Inc.*, 2020 WL 3493619, at *2 (N.D. Cal. June 27, 2020) (same); *United States ex rel. MPA Constr. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934 (D. Md. 2004) (staying Miller Act claim against surety while ordering plaintiff subcontractor into arbitration with the general contractor for the underlying claim); *U.S. ex rel. Capolino Sons, Inc. v. Elec. & Missile Facilities, Inc.*, 364 F.2d 705, 706–09 (2d Cir. 1966) (affirming lower court's stay of Miller Act proceedings against prime contractor and surety pending arbitration required under applicable subcontract). Eagle Rock does not cite any authority to suggest its claims against Liberty Mutual should proceed during the arbitration of its underlying claims against Carothers.

Third, and finally, the only case Eagle Rock cites—*Lewis*, 15 P.3d at 1153—recognized that a court has discretion to stay litigation pending the outcome of arbitration. 15 P.3d at 1153. The Court finds it is appropriate to exercise such discretion here because Eagle Rock does not dispute that its: (1) claims against Carothers are subject to arbitration under the Subcontract; (2) claims against Carothers are appropriately stayed; and (3) claims against Liberty Mutual arise out of and are related to Carothers' alleged breach of the Subcontract.

Although Eagle Rock will be forced to await payment while its claims against Carothers are adjudicated in an arbitration proceeding, Eagle Rock expressly agreed to arbitrate "all claims, disputes, and other matters in controversy" arising out of or relating to the Subcontract. Dkt. 11-2, § 19. As noted, allowing both this case and the arbitration to proceed at the same time would risk inconsistent results and would needlessly duplicate the proceedings. *Newton*, 750 F.2d at 1427; *United States v. Fid. & Deposit of Md.*, 2016 WL 6298790, at *6 (W.D. Wash. Oct. 27, 2016). In short, the "orderly course of justice, measured in terms of simplifying the issues, proof and questions of law" warrants a stay of Eagle Rock's claims against each of the Defendants. *CMAX*, 300 F.2d at 268; *Mediterranean Enters.*, 708 F.2d at 1465 ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case.") (cleaned up).

### B. Dismissal

In their Motion to Stay, Defendants argued that if Eagle Rock's claims were not stayed pending arbitration, the Subcontract's prohibition against litigating in Idaho should be enforced, and this case should be dismissed. Dkt. 11-2, at 11–13. Because the Court finds Eagle Rock's claims against Defendants *should* be stayed, it need not address Defendants' alternative request for dismissal.

However, it is worth noting that the parties focus much of their briefing on the validity of the Subcontract's forum selection clause. In response to Defendants' alternative argument regarding dismissal, Eagle Rock contends the provision in the Subcontract which

restricts Eagle Rock from litigating in Idaho is void under Idaho Code § 29-110(1). Idaho Code § 29-110(1) provides:

> Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract in Idaho tribunals, or which limits the time within which he may thus enforce his rights, is void as it is against the public policy of Idaho. Nothing in this section shall affect contract provisions relating to arbitration so long as the contract does not require arbitration to be conducted outside the state of Idaho.

*Id.* Eagle Rock maintains the "clear and unambiguous language of I.C. § 29-110(1) requires arbitration to occur in Idaho." Dkt. 16, at 7.

As mentioned, this Court's role is limited to deciding whether there is agreement to arbitrate and whether the instant dispute is within the arbitration agreement's scope. *Lifescan,* 363 F.3d at 1012. Because both elements are satisfied, the FAA requires this Court to enforce the arbitration agreement. *Id.* Any procedural issues, including the hearing locale, must be resolved by the arbitrator, and not by this Court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("Procedural questions which grow out of the dispute . . . are presumptively *not* for the judge, but for the arbitrator, to decide.") (cleaned up) (emphasis in original); *Aerojet-Gen. Corp. v. Am. Arb. Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973) (reversing district court's attempt to interfere with arbitrator's choice of hearing locale). Thus, the Court cannot determine the location of the arbitration.

The Court will consider the validity of the forum selection clause, if necessary, should this case proceed once the arbitration has concluded. While it is premature to do so at this stage of the proceedings, the Court highlights that the Ninth Circuit recently determined a forum selection clause, designating Delaware as the forum for disputes

arising out of a contract, was unenforceable because it contravened the strong public policy of Idaho set forth in Idaho Code section 29-110(1). *Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 916 (9th Cir. 2019).

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay is granted in part and denied in part. It is granted in that these proceedings are stayed with respect to Eagle Rock's claims against all Defendants. The Motion to Stay is denied with respect to Defendants' alternative request for dismissal. If necessary, the Court will consider the parties' contentions regarding the forum selection clause once the arbitration has concluded.

## V. ORDER

Now, therefore, **IT IS HEREBY ORDERED**:

1. The Motion to Stay (Dkt. 11) is **GRANTED in PART** with respect to Defendants' stay request. This matter is **HEREBY STAYED** against all Defendants pending completion of arbitration proceedings between Eagle Rock and Carothers. The parties are directed to file a joint notice concerning the status of the case and how they intend to proceed within fourteen (14) days of the completion of the arbitration proceedings;

2. The Motion to Stay (Dkt. 11) is **DENIED in PART** with respect to Defendants' alternative request for dismissal.

DATED: May 25, 2022

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 13